1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GREGORY TYREE BROWN                )
                                   )
                                   )   No. CV-05-5071-AAM
                                   )   **ORDER GRANTING**
                                   )   **DEFENDANTS' MOTION**
                                   )   **FOR SUMMARY JUDGMENT,**
              Plaintiff,           )   ***INTER ALIA***
                                   )
        vs.                        )
                                   )
                                   )
DEAN MASON, et al.,                )
                                   )
                                   )
                                   )
              Defendants.          )
_____)

        **BEFORE THE COURT** are plaintiff's Motion For Summary Judgment (Ct.
Rec. 21) and defendants' Motion For Summary Judgment (Ct. Rec. 17).

**I. BACKGROUND**

        Plaintiff was previously a litigant in *Brown v. Kautzky*, CV-89-048-FVS.
At issue in *Brown* was a Department of Corrections (DOC) Policy Directive (440.000
§A.3.a.2) which prohibited inmates from retaining magazines more than six months
old.  Pursuant to that policy, employees at Washington State Penitentiary (WSP) had,
in 1986, searched plaintiff's photo album and arbitrarily confiscated and destroyed
certain photographs which plaintiff had cut out of magazines.  On September 24,
1999, Honorable Fred Van Sickle entered an "Order Granting In Part And Denying

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -1**

1  In Part Defendants' Motion For Summary Judgment and Order To Show Cause."
2  Judge Van Sickle denied summary judgment to the defendants on plaintiff's First
3  Amendment claim, finding that defendants had failed to show as a matter of law that
4  the challenged policy was rationally related to legitimate penological interests, or that
5  the decision to confiscate the photographs was pursuant to a different policy
6  prohibiting "altered" items.  The  court directed the defendants to show cause why it
7  should not *sua sponte* enter judgment in favor of plaintiff on his claim for injunctive
8  relief.  Subsequently, the defendants rescinded the policy in question (pertaining to
9  the age of magazines) and Judge Van Sickle, in an order dated March 28, 2000, found
10 plaintiff's claim for injunctive relief was moot.

11     In May 2004, WSP correctional officers confiscated a photo album from the
12 defendant which contained magazine tear-outs.  Plaintiff filed a Level I grievance
13 seeking the return of his property.  The grievance was denied.  Plaintiff then filed a
14 Level II grievance appeal which was denied by Gale Munden, Acting Superintendent,
15 who asserted the restriction on magazine tear-outs was in compliance with DOC
16 Policy Directive 440.000, Section XI(B).  Plaintiff then filed a Level III grievance
17 appeal. This appeal was denied by Dean Mason, Grievance Program Manager in the
18 Office of Correctional Operations for DOC, who cited DOC Policy Directive 440.000
19 and stated "[i]t is impossible to determine if parts of magazines (pictures removed)
20 actually belong to the person in possession of them; therefore, it is a legitimate
21 concern for staff in identifying authorized personal property."

22     Defendant Jerald Partlow confiscated magazines and magazine tear-outs from
23 the plaintiff sometime between May and July 2004.  Plaintiff filed a Level I grievance
24 requesting this property be returned to him.  This grievance was denied by defendant
25 Dave Snell who asserted the seizure was in compliance with DOC Policy Directive
26 440.000, Section XI(B).  Plaintiff then filed a Level II grievance appeal which was
27 denied by defendant Sherry Hartford, Acting Superintendent, relying on DOC Policy
28 Directive 440.000, Section XI(B).  Plaintiff then filed a Level III grievance appeal

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -2**

1  which was denied by defendant Mason on the basis of DOC Policy Directive 440.000.

2       Plaintiff contends defendants have deprived him of his First Amendment rights

3  by confiscating "his personal magazine photos and magazines solely because the

4  magazine photos were taken out of his personal magazines." (Complaint, Ct. Rec. 6

5  at pp. 13-14).[1]

6

## II. SUMMARY JUDGMENT STANDARD

8       The purpose of summary judgment is to avoid unnecessary trials when there is

9  no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th

10  Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a

11  party is entitled to summary judgment where the documentary evidence produced by

12  the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13  242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir.

14  1985).  Summary judgment is precluded if there exists a genuine dispute over a fact

15  that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S.

16  at 248.

17       The moving party has the initial burden to prove that no genuine issue of

18  material fact exists.. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S.

19  574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under

20  Rule 56, "its opponent must do more than simply show that there is some

21  metaphysical doubt as to the material facts." *Id*.  The party opposing summary

22

23  _____

24       [1] The only complaint at issue is the complaint filed August 22, 2005 (Ct.

25  Rec. 6).  Although a "First Amended Complaint" (Ct. Rec. 28) and a "Second
   Amended Complaint" (Ct. Rec. 54) appear of record, plaintiff was never granted

26  leave to file an amended complaint.  The complaint at issue (Ct. Rec. 6) does not

27  allege a Fourteenth Amendment claim for unauthorized deprivation of property
   without procedural due process and hence, the only claim the court addresses is

28  plaintiff's First Amendment claim.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -3**

1   judgment must go beyond the pleadings to designate specific facts establishing a
2   genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548
3   (1986).

4   In ruling on a motion for summary judgment, all inferences drawn from the
5   underlying facts must be viewed in the light most favorable to the nonmovant.
6   *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a
7   party who fails to make a showing sufficient to establish an essential element of a
8   claim, even if there are genuine factual disputes regarding other elements of the claim.
9   *Celotex*, 477 U.S. at 322-23.

10

11  **III.  DISCUSSION**

12      **A.  Preclusive Effect of Ruling in CV-89-048-FVS**

13      Plaintiff moves for summary judgment based on what he says is the "preclusive"
14  effect" of the previous ruling in *Brown v. Kautzky*, CV-89-048-FVS.

15      Having reviewed Judge Van Sickle's September 24, 1999 order, it is clear to
16  this court that the only issue Judge Van Sickle ruled upon was the validity of the DOC
17  policy prohibiting inmates from retaining magazines more than six months old.  He
18  did not rule upon the validity of any policy pertaining to "altered items."  According
19  to Judge Van Sickle:

20          The Court finds that the defendants are not entitled to summary
            judgment on Brown's First Amendment claim, for they have
21          failed to show that the challenged Policy is rationally related
            to legitimate penological interests, **or that the decision to**
22          **confiscate Brown's photographs was done pursuant to**
            **a different policy prohibiting "altered" items**.

23  (Ex. F to Plaintiff's Memorandum In Support Of Motion For Summary Judgment at
24  at p. 15, Ct. Rec. 23)(Emphasis added).

25      The action now before this court involves a challenge to the "altered items"
26  policy.  Because the issue decided by Judge Van Sickle in CV-89-048-FVS is not the
27  same as the issue currently before the court, and because the "altered items" policy
28

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -4**

1   was not actually litigated in the prior action in support of Judge Van Sickle's ruling,

2   that ruling does not collaterally estop defendants in the captioned matter from

3   litigating the constitutional validity of the "altered items" policy as applied to photos

4   torn out of magazines and the altered magazines. *Resolution Trust Corp. v. Keating*,

5   186 F.3d 1110, 1114 (1992). Judge Van Sickle simply did not rule on the "altered

6   items" policy and accordingly, there is no issue preclusion or collateral estoppel as it

7   is otherwise known.

8        In addition to issue preclusion, res judicata encompasses what is known as

9   claim preclusion.   Under claim preclusion, a final judgment on the merits of a claim

10  bars subsequent litigation of that claim. *Americana Fabrics, Inc. v. L & L Textiles,*

11  *Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985). Claim preclusion "prevents litigation of all

12  grounds for, or defenses to, recovery that were previously available to the parties,

13  regardless of whether they were asserted or determined in the prior proceeding."

14  *Id.*, quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 970 (1979). There must be

15  (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between

16  the parties. *Tahoe-Sierra Preservation Council. Inc. v. Tahoe Regional Planning*

17  *Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). CV-89-048-FVS was not resolved on

18  the merits. Judgment was never entered for either plaintiff or defendants in that prior

19  action. Defendants were directed to show cause why the court should not grant

20  summary judgment *sua sponte* in favor of plaintiff Brown. Because defendants

21  advised they had rescinded the policy at issue (the policy pertaining to the age of the

22  materials), Judge Van Sickle declared the action to be moot and did not enter

23  summary judgment in favor of plaintiff Brown. Accordingly, there is no basis for

24  claim preclusion.

25

26       **B.  First Amendment**

27       "[A] prison inmate retains those First Amendment rights that are not

28  inconsistent with his [or her] status as a prisoner or with the legitimate penological

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -5**

objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a prison regulation is reasonably related to a legitimate penological interest, the following factors are considered: 1) whether there is a valid rational connection between the regulation and the interest used to justify the regulation; 2) whether the prisoners retain alternative means of exercising the right at issue; 3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and 4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Id.* at 89-91. According to *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990):

> Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests. An evidentiary showing is required as to each point.

The prison regulation at issue here is DOC 440.000, Section XI(B), which provides with regard to the "Personal Property For Offenders" that:

> Any items found in the offender's possession that are not listed on the property form, have distorted or altered markings, or are substantially modified from the manufacturer's original configurations shall be considered *contraband* and disposed of per contraband management procedures.

An attachment to this regulation, "Maximum Allowable Personal Property Matrix" for Men's Facilities, specifies that each inmate is allowed a photo album, provided it holds personal photos only, and no newspaper or magazine clippings. (See Attachments A and B to Ex. 3 at Ct. Rec. 19).

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -6**

Defendant Ione Graham-Talbott[2] has been the Property Room Sergeant at WSP since 1987.  According to her:

> DOC has an interest in not allowing offenders to possess items that have been altered from their original manufactured condition.  This interest furthers DOC's goal of maintaining the security of the prisons and the safety of offenders.  When pages are torn out of magazines, prison staff are not able to determine whether the tear-outs were taken from the Prison Library, if the tear-outs came from another offender's magazines, or if the tear-outs came from the offender's own magazines.

> Offenders are not permitted to be in possession of other offenders' property as this can lead to allegations of theft[,] and property can be used to barter as a form of currency.  Both of these possibilities are serious threats to prison security and offender safety.  Offenders also are not permitted to be in possession of property that belongs to DOC, i.e., Prison Library materials.  If an offender cannot prove ownership of the property in his possession, correctional officers and other prison staff have no way of knowing whether the property actually belongs to the offender.

> Property that has been altered may have been altered for myriad reasons including, but not limited to, hiding contraband, or to communicate threats or other inappropriate messages to other offenders.  All of these reasons constitute a threat to prison security and offender and staff safety.

> If offenders are allowed to possess altered property, correctional officers and other prison staff would be placed in the position of spending valuable time and resources trying to determine ownership and whether or not the alterations are disguising contraband or inappropriate communications.

> If every offender is allowed to possess altered items, prison staff will be forced to try to discern who owns every single magazine tear-out in an offender's cell, which will have a tremendous impact not only on staff, but on prison resources.  Additionally, allowing offenders to possess altered items is to allow offenders to possess property that may be altered to communicate threats to other offenders or staff, thus having a potentially tremendous impact on other offenders and prison staff.

(Graham-Talbott Decl. at pp. 3-5., Ex. 3 to Ct. Rec. 19).

---

[2] Errantly named in the caption as "Sgt. Beverly Graham."

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -7**

Plaintiff contends that photos torn out of magazines present no greater threat than "intact" magazines which inmates are permitted to have in their cells, subject to a quantity restriction.[3]  He also asserts that defendants offer no evidence that tearing a page from a magazine increases the chances of that magazine being stolen, loaned sold, traded or bartered, however, he apparently fails to recognize that defendant's concern is not the magazine being bartered, but rather the photos which have been torn out from the magazine.  Plaintiff also notes that inmates are allowed to receive mail from outside the penal institution containing a "single magazine article."  DOC Policy Directive 450.100, Section V(A)(23).  (Ex. 23 to Plaintiff's Statement Of Material Facts In Dispute, Ct. Rec. 64).   Mail containing more than a single magazine article per envelope is unauthorized.  Plaintiff contends that by virtue of 450.100, Section V(A)(23), the "altered items" policy of DOC 440.000, Section XI(B), is not intended to apply to magazine tear-outs, and 450.100, Section V(A)(23) reveals that no legitimate penological interest is served by prohibiting an inmate from possessing photographs torn out from a magazine.

Defendants have submitted a declaration from Steven L. Fleenor who has been the Mail Room Sergeant at WSP since 2000.  According to him, DOC Policy allows offenders to receive whole, unaltered magazines through the mail[4], as well as a single article clipped from a magazine.  These are reviewed to determine whether they contain any contraband.  According to Fleenor, DOC policy does not authorize offenders to receive photos clipped or torn from a magazine. (Declaration of Fleenor,

---

[3]  Prisoners in the general population are allowed to possess a box of "[b]ooks, periodicals, and publications [which] must be stored in a space not exceeding a 2,160 cubic inch capacity (i.e., a carton 18" x 12" x 10" or any other dimensions that do not exceed 2,160 cubic inches)."  DOC 440.000, Section IV(A)(1).

[4]  Unauthorized mail includes "[p]ublications that have been altered after publication."  DOC 450.100, Section V(A)(13).

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -8**

Ex. 5 to Ct. Rec. 66).

Whole, unaltered, "intact" magazines which are mailed into the institution from a publisher/retailer to an inmate presumably include a mailing label which identifies the intended recipient.[5] "Mail to offenders shall be addressed in a complete enough manner that the facility staff can specifically identify the intended recipient. Mail that is not addressed in this manner will be rejected." DOC Policy Directive 450.100(IV)(A). Plaintiff notes that defendant Mason admitted that prison policy does not require that magazines arriving for inmates housed at WSP must "have the prisoner's name and/or commitment number stamped or written **directly** onto the magazine." (Ex. M to Plaintiff's Memorandum In Support Of Motion For Summary Judgment at p. 2, Ct. Rec. 23)(Emphasis added). That answer, however, is not necessarily inconsistent with the requirement that there be some means of identifying to whom the magazine belongs (i.e., a label on the magazine which can be torn off, or some type of plain cover for the magazine containing a mailing label). Moreover, DOC 440.000, Section VIII(A), requires that all personal property to be retained by an offender be itemized and recorded on a certain form or a computer version of that form, and "[i]tems shall be marked with the offender's number for identification." Therefore, magazines, when they are delivered to the inmate in his cell, bear a mark identifying that the magazine belongs to the inmate. Plaintiff acknowledges this is true, as is evidenced by his September 22, 2004 Level III grievance appeal in which he argued that tearing pages out of a magazine did not prevent staff from identifying the owner of the magazine because "[t]he inmate's name is still on the front of the magazine." Plaintiff suggested that a solution was to require inmates to have their names and DOC numbers on the magazine tear outs "in the same way that inmates are required to have [their] names & DOC numbers on magazines themselves & Polaroid

---

[5] Publications not mailed directly from the publisher/retailer are unauthorized. DOC 450.100, Section V(A)(27).

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -9**

pictures." (Ex. 21 to Plaintiff's Statement Of Material Facts In Dispute, Ct. Rec. 64). In sum, ownership of whole, unaltered, "intact" magazines can readily be ascertained after the magazine is delivered to the inmate, provided the inmate's name and number is not removed from the magazine. Photos torn out from the magazine, however, do not bear the name and number of the inmate and this is why the concern about ownership arises.

A magazine "article" mailed into the institution conceivably could include a photo as part of the "article," but obviously an "article" is comprised of the written word and is not a photo by itself. This is the type of thing which would be mailed to the inmate from a noncommercial source, i.e., a family member and then screened for contraband by the mail room. Publishers and retailers (commercial sources) do not mail clippings. They mail only the entire publication in which the article is contained. Because of this contraband screening process and the envelope in which the article is contained, there should be less difficulty in determining at some later point, if necessary, to whom the article belongs.

The court is unaware of any authority that prison officials may not prohibit inmates to possess photos which have been torn out from magazines. Because of this absence of clearly established law, the defendants would be entitled to qualified immunity from any award of damages, even assuming there was a violation of plaintiff's constitutional rights.[6] It is noted that Washington's DOC Policy is in accord with other legal authority which has held that a ban on all magazine article clippings and photocopies of such clippings mailed from noncommercial sources violates the First Amendment rights of inmates. *Lindell v. Frank*, 377 F.3d 655 (7th

---

[6] A qualified immunity analysis has two prongs: (1) taken in the light most favorable to the aggrieved party, do the facts alleged show the officer's conduct violated a constitutional right, and (2) if a constitutional right was violated, was that right clearly established? *Beier v. City of Lewiston*, 354 F. 3d 1058, 1064 (9th Cir. 2004)(*citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -10**

1    Cir. 2004); *Allen v. Coughlin*, 64 F.3d 77 (2nd Cir. 1995).  Washington's policy does

2    not ban all such clippings, as discussed above.

3         Plaintiff does not contend that he has been deprived of articles clipped from

4    magazines which have been mailed to him from noncommercial sources (i.e., family

5    members).  Plaintiff contends the First Amendment should allow him the unrestricted

6    right to cut out pictures from his magazines and keep them in his possession.  The

7    court find that defendants have legitimate penological interests for not allowing this,

8    primarily because there is no reasonable way for them to tell for sure if the photos

9    have been clipped from magazines belonging to the plaintiff versus from some other

10   inmate's magazines, or from magazines from the Prison Library.  Prison officials

11   cannot reasonably be expected to look through every photo tear out in an effort to

12   confirm that it comes from a magazine belonging to the plaintiff.  Intact magazines do

13   not present this problem.  A mailing label or some other kind of mark serves to

14   identify the owner of the magazine and its presence makes it more difficult for other

15   inmates to obtain the magazine through theft or trade.  If the plaintiff likes a certain

16   photo in one of his magazines, he simply needs to keep the magazine "intact."

17   Certainly, quantity restrictions will prevent him from keeping every magazine he

18   receives and so he will need to make a choice about which magazines, and the photos

19   therein, he wants to keep.

20        What about confiscation of the magazines which have been altered because

21   photos have been torn out?  While the altered magazine may still contain a label or

22   mark indicating it belongs to the plaintiff, the problem is that what was screened for

23   contraband when it first came into the institution was an unaltered, intact magazine.

24   The defendants contend that altered magazines can be used to disguise contraband or

25   inappropriate communications by the inmate.  This court has no reason to dispute that.

26   While it would seem that even unaltered magazines can be used to disguise

27   contraband or inappropriate communications, the fact is that the unaltered magazines

28   have already been subject to a screening and if subsequently altered by the inmate,

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -11**

1   will require re-screening.[7]

2       Defendants have established a valid rational connection between DOC Policy
3   Directive 440.100, Section XI(B), and the interest used to justify application of that
4   regulation to photos torn out of magazines (avoiding disputes over ownership of
5   property), and application of that regulation to the altered magazines (preventing use
6   of altered magazines for disguising contraband and inappropriate communications).
7   Plaintiff has an alternative means of exercising the right at issue in that he can simply
8   leave the photos in the  magazine without cutting them out.  While that may burden
9   the plaintiff in that the quantitative restriction does not allow him to keep all of the
10  intact magazines he may want to keep, the security interests of the institution justify
11  that burden.  Furthermore, that burden is easily outweighed by the burden that would
12  be placed on prison staff if they were required to match up cut out photos with
13  particular magazines to insure the photos belong to a particular inmate, screen each
14  photo and place some mark thereon identifying its ownership by a particular inmate,
15  and screen altered magazines for contraband or inappropriate communications.
16  Plaintiff has not identified easy alternatives which could be implemented at minimal
17  cost to legitimate penological interests.

18

19  **IV.  CONCLUSION**

20      Courts should accord prison officials great deference when analyzing the
21  constitutional validity of prison regulations.  *Turner*, 482 U.S. at 84-85.  Doing so
22  here compels this court to find that DOC Policy Directive 440.000, Section XI(B), is
23  constitutionally valid as applied to photos torn out of magazines and the magazines

24  _____

25      [7] Of course, corrections officials may periodically re-screen unaltered
26  magazines for contraband and inappropriate communications that may have been
    inserted in the magazines following delivery to the inmate, but when magazines
27  have been altered, there is no option.  Corrections officials must re-screen the
28  magazines when they have been altered.

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -12**

1  which have been altered as a result.  There are no disputed issues of material fact
2  which preclude this court from making this finding as a matter of law.  Plaintiff's
3  Motion For Summary Judgment (Ct. Rec. 21) is **DENIED** and defendants' Motion
4  For Summary Judgment (Ct. Rec. 17) is **GRANTED**.  Judgment is awarded to
5  defendants on plaintiff's First Amendment claim.

6     **IT IS SO ORDERED**.    The District Executive shall enter judgment
7  accordingly,  forward copies of the judgment and this order to plaintiff and to counsel
8  for defendants, and close the file.

9     **DATED** this____31ˢᵗ_____of July, 2006.

11        ____s/ Alan A. McDonald_____
            ALAN A. McDONALD
12         Senior United States District Judge

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT -13**